MATTHEW R. WALSH

19197 GOLDEN VALLEY RD #333

SANTA CLARITA, CA 91387

(661) 644-0012

Plaintiff In Pro Per,

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW R. WALSH<br><br>Plaintiff In Pro Per,<br><br>vs.<br><br>ROKOKO ELECTRONICS<br>(AND DOES 1 THROUGH 50,<br>INCLUSIVE)<br><br>Defendant | Case No.: 2:25-CV-05340-ODW-RAO<br><br>*[Assigned to Hon. Otis D. Wright II,<br>Courtroom 5D]*<br><br>Hearing date: February 23, 2026<br>Hearing time: 1:30PM<br>Place: Dept. 5D<br><br>**OPPOSITION TO DEFENDANTS<br>MOTION TO DISMISS**<br><br>Filed concurrently with:<br>Walsh Decl. re: Original 2020 Contract<br>Walsh Decl. re: Falsified Evidence<br>Walsh Decl. re: Terms & Cond. RFA's<br>Walsh Decl. re: Estoppel & Preclusion |

## <u>INTRODUCTION</u>

Defendants motion fails from a number of issues:

**(First)** Defendant's fourth motion to dismiss is not a proper Rule 12(b)(6)

filing as they have introduced and relied upon evidence not within the four corners

PAGE 1

of the Complaint. They attempted to side-skirt Rule 12 by filing an RJN with new evidence not within the Complaint of which the source cannot be identified or validated. Further, the evidence they are trying to introduce has been objected to *before* in other filings and is in dispute. Therefore, **the Court must treat Defendant's motion under 12(d) as a Rule 56 motion which too will fail** as Defendant's themselves have expressly disputed the permissibility of the very evidence their motion relies on during discovery. **(Second)** Defendants' are estopped from bringing this motion as for every dispute they bring forth, they prior claimed is inapplicable to any cause, claim and defense of *any* party and; **(Third)** Defendant's motion wholly relies on fabricated terms & conditions and; **(Fourth)** relies on manipulated and incomplete evidence designed to mislead the Court and; **(Fifth)** It cited and relies strongly upon yet another AI-hallucinated authority **(Sixth)** it largely ignores the operative pleading and record and; **(Eighth)** Rather than test the legal sufficiency of the allegations, Defendants attempt to dispute particularized facts, attack evidence, and rewrite the record -- conduct that is improper for a Rule 12(b)(6) motion.

## TABLE OF CONTENTS

*INTRODUCTION*..................................................................................................*1*

*TABLE OF CONTENTS*.......................................................................................*2*

*SUMMARY OF MISCONDUCT* ................................................................................3

DEFENDANTS MOTION TO DISMISS IS HIGHLY IMPROPER ................4

[IMPROPER #1] FALSIFIED EVIDENCE: TERMS & CONDITIONS ..........4

[IMPROPER #2] MISREPRESENTED EVIDENCE FROM NINTENDO .......7

[IMPROPER #3] FALSE STATEMENTS ......................................................11

[IMPROPER #4] AI-GENERATED CASELAW ...........................................12

*CONVERSION TO A RULE 56 MOTION* ...............................................................13

DEFENDANTS MOTION IS NOT A PROPER 12(b)(6), IT IS A RULE 56 .13

DEF. MOT. FAILS DUE TO EQUITABLE ESTOPPEL & PRECLUSION...14

DEFENDANTS ARE ESTOPPED .................................................................15

DEFENDANTS ARGUMENTS ALL FAIL SUBSANTIVELY ..........................18

FABRICATING EVIDENCE WARRANTS TERMINATION ............................24

FABRICTAED CASELAW WARRANTS TERMINATION................................26

DEFENDANTS REQUEST TO DISMISS WITH PREJUDICE IS MOOT ..........29

*CONCLUSION*.....................................................................................................30

PRAYER FOR RELIEF ...............................................................................31

*CERTIFICATE OF COMPLIANCE* ......................................................................32

## SUMMARY OF MISCONDUCT

## DEFENDANTS MOTION TO DISMISS IS HIGHLY IMPROPER

## [IMPROPER #1] FALSIFIED EVIDENCE: TERMS & CONDITIONS

1.  The Defendant's Motion to Dismiss fails for a number of reasons. **First and foremost,** once again the Defendants have not only swapped key evidence but also <u>fabricated</u> that evidence to support their alternate reality. In their prior motion to dismiss they too ignored the Complaint and substituted the terms & conditions -- which admit to their misconduct -- with an entirely different set of innocuous and inert 'general terms'. These terms were in no way related to the specific product(s) or software in question and entirely unrelated to all claims. Defendant was notified many times, yet, refused to cure. Finally, Plaintiff filed a motion for sanctions for this precise issue (See Dkt #117, 117-7).

2.  Here, Defendant does it *again* – post sanctions motion for the same -- to support their MTD by filing an RJN which they hand-added an "effective date" to confuse the Court and make it appear as though those terms were active during Plaintiff's association as a customer. **These terms as provided to the Court have <u>never</u> existed outside of this Court.** Defendant should have to show cause and provide a verifiable online source with references this exact document, with that exact date. Plaintiff

has every version of their software from 2020 forward, so it would be of great interest to be privy to the Defendants' response. *(see "Walsh Decl. Fabricated Evidence")*

3. This is not a mistake. It's a well-documented pattern. If they do not manipulate the terms & conditions, they cannot defend their case.

4. Regardless of their attempts to alter reality, Defendant's statements suffer an inescapable timeline problem:

   a. **[2020]** Their own evidence admits Plaintiff purchased the equipment in 2020 (Mot. Ex. 1-3). The 2020 terms Plaintiff was bound to at that time were spoliated at the very onset of this action (Dkt #117-12). Having destroyed all copies, Defendant refused to produce them: *["To the extent that Plaintiff contends that prior versions of Rokoko's Terms and Conditions are relevant to the case, it can seek such information from Rokoko in discovery."].* However, in discovery, Defendant wholly refuses to produce them: *["Rokoko objects to the extent that this Request seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible or relevant evidence."]*

   b. **[2022]** Defendant issued a new agreement in 2022 to supersede the 2020 agreement. These terms stayed active until March 29, 2025.

The Defendant's cannot claim the post-March 29, 2025 terms they have provided with their motion are the operative terms as they themselves submitted the 2022 terms to the Court (Dkt #1-3, p. 372-383). Both the 2020 and 2022-2025 terms also gave Defendants no collection or rights of any I.P. and in fact, disclaimed it *(while they secretly collected and used that I.P.).*

c. Most problematically for the Defendant, Plaintiff finally acquired the spoliated 2020 terms on January 21, 2026. Those terms defeat every one of Defendant's contentions, statements and so called 'facts' placed before the Court. *(see Request for Judicial Notice Dkt #139)*

d. **[2024]** As the Complaint, evidence and Defendants' own written communications make clear – Defendant's equipment was destroyed in 2024.

    i. **Absent the ability to travel through time, he could never assent to any future terms because he had no equipment and therefore had no possible use of the product(s) / service(s).**

      ii.  Further, the 2020 terms explicitly state they supercede all terms – *forever* – **even later terms**. Plaintiff remains bound to only those terms by Defendant's own design.

  e.  **[2025]** The terms and conditions which were released on March 30, 2025; are the only terms which give Defendants' any rights to any intellectual property – forced upon users' retroactively and without assent. Defendants' are entirely aware of this paradox, as they submitted the 2022 and 2025 terms in the Notice of Removal (Dkt #1-3, p. 385-396).

  f.  **In simple summation: (2020)** Plaintiff buys and agrees to the terms which disclaim any access or data collection and which expressly bind him against all future terms forever; **(2022)** new terms are instituted still contain no rights to any data or access; **(2024)** Plaintiff's hardware is destroyed, no use occurs beyond about September **(March 29, 2025)** the 2022 terms are still in effect for all customers **(March 30, 2025)** Defendant issues retroactive IP-rights granting terms without any assent to all users.

**[IMPROPER #2] MISREPRESENTED EVIDENCE FROM NINTENDO**

5.  To prevail on their Motion to Dismiss under 'Tortious Interference' the Defendant provides the Court misrepresented evidence in stating: "*["The*

*Nintendo Developer Portal is free for anyone to join and release date and price are set by the developer. See https://developer.nintendo.com/faq. The same is true for Sony's Development Portal. See https://developer.sony.com/cellular-iot/how-to-register. Signing up voluntarily for a website does not demonstrate an economic relationship"].* Defendant entirely ignores the inconvenient part of Nintendo's website to manufacture a desired legal outcome. Once you choose an option of what type of developer you are, it immediately states: *["**<u>You do not belong to an established business/company and would like to present to Nintendo a project with commercial intent:</u>***

6. *We appreciate your interest in Nintendo and our highly acclaimed line of videogame products. To us, it's a sign of recognition and your vote of confidence in the Nintendo name. We regret that we are unable to go forward with your proposal. As you might imagine, we receive numerous requests. While we would like to be able to accommodate them all, **this is simply not possible, <u>however deserving the project</u>**. We wish you all the best in your future endeavours."] (see Ex. 9).* Had Defendant provided the Court with *this text*, their Motion to Dismiss for the first cause of action would fail as it clearly signals that Plaintiff's game(s) were submitted, vetted, approved and continued through the licensing

PAGE 8

processes to release. This inconvenient part of their evidence defeats

speculation and lack of a third-party contract.

7. **CONTRACTS ARE NOT SPECULATIVE AND EXIST, PLAINTIFF IS SIMPLY BARRED FROM SHARING**

Plaintiff is contractually barred from sharing the Confidential Nintendo

Switch agreement. However, the SEC has made a prior (and almost

identically similar) agreement available at:

https://www.sec.gov/Archives/edgar/data/718877/000110465905027535/

a05-8078_1ex10d42.htm of which Plaintiff requested Judicial Notice to

be taken:

Defendant's conjecture that anyone can sign up free and make and sell games through Nintendo is extremely unfounded and contrary to every agreement Nintendo has ever provided:

*LICENSEE desires a license to use highly proprietary programming specifications, development tools, trademarks and other valuable intellectual property rights of NOA and its parent company, Nintendo Co., Ltd. (collectively "Nintendo"), to develop, have manufactured, advertise, market and sell video game software for play on the Nintendo DS system."*

*Game(s)" means the Nintendo DS version of an interactive **video game** program, or other applications **approved by Nintendo** (including source and object/binary code) developed for the Nintendo DS system.*

*"NDA" means the non-disclosure agreement providing for the protection of Confidential Information related to the Nintendo DS system previously entered into between NOA and LICENSEE.*

> *Limited License Grant.  For the Term and for the Territory, NOA grants to LICENSEE a nonexclusive, nontransferable, limited license to use the intellectual Property Rights to develop Games for manufacture, advertising, marketing and sale as Licensed Products, subject to the terms and conditions of this Agreement. Except as permitted under a separate written authorization from Nintendo, LICENSEE shall not use the Intellectual Property Rights for any other purpose.*
>
> *Development and Sale of the Games. LICENSEE may develop Games and have manufactured, advertise, market and sell Licensed Products for play on the Nintendo DS system only in accordance with this Agreement.*

Defendants continued conjectures regarding a zero-friction, zero-contract licensing ability through Nintendo is similarly unfounded. In fact, Nintendo is involved in the approval or disapproval for *every step* of the process, even something as simple and personal as the games' artwork:

> *4.5      Submission of Artwork.  Upon submission of a completed Game to NOA, LICENSEE shall prepare and submit to NOA the Artwork for the proposed Licensed Product. Within seven (7) business days of receipt, NOA shall approve or disapprove the Artwork. If any Artwork is disapproved, NOA shall specify in writing the reasons for such disapproval and state what corrections or improvements are necessary. After making the necessary corrections or improvements, LICENSEE shall submit revised Artwork to NOA for approval. NOA shall not unreasonably withhold or delay its approval of any Artwork.  The approval of the Artwork by NOA development and quality of the Artwork or in any way create any warranty for the Artwork or any Licensed Product by NOA.*

Much to Defendant's conjecture, Plaintiff in fact *is **barred from sharing the agreement(s)***

> *Definition. "Confidential Information" means information provided to LICENSEE by Nintendo or any third party working with Nintendo relating to the hardware and software for the Nintendo DS system or the Development Tools, including, but not limited to, (a) all current or future information, know-how, techniques, methods, information, tools, emulator hardware or software, software development specifications and/or trade*

PAGE 10

*secrets, (b) any patents or patent applications, (c) any business, marketing or sales data or information, and (d) any other information or data relating to development, design, operation, manufacturing, marketing or sales. Confidential Information shall include all confidential information disclosed, whether in writing, orally, visually, or in the form of drawings, technical manifest, in any form, the above listed information. Confidential Information shall not include (i) data and information that was in the public domain prior to LICENSEE's receipt of the same hereunder, or that subsequently becomes part of the public domain by publication or otherwise, except by LICENSEE's wrongful act or omission, (ii) data and information that LICENSEE can demonstrate, through written records kept in the ordinary course of business, was in its possession without restriction on use or disclosure, prior to its receipt of the same hereunder and was not acquired directly or indirectly from Nintendo under an obligation of confidentiality that is still in force, and (iii) data and information that LICENSEE can show was received by it from a third party who did not acquire the same directly or indirectly from Nintendo and to whom LICENSEE has no obligation of confidentiality.*

8. Lastly, 'signing up' (to whatever degree the Defendants' limited knowledge on the topic allows) may be free – however, at a minimum mutual party copyright/licensing agreements, releases and payment agreements obviously must exist. Further, Nintendo takes 30% for life. That is hardly 'free' and clearly requires a contract. No reasonable person could think otherwise.

**[IMPROPER #3] FALSE STATEMENTS**

9. The motion is fraught with materially false statements, which Defendant knows or should know is false simply by reviewing the material. In fact,

PAGE 11

it was discussed during the 7-3 and Counsel stated they'd "look into it".

Rather than list each false statement, Plaintiff provides the simplest to illustrate:

a. **"Plaintiff's Amended Complaint again fails to show that Rokoko had knowledge of the relationships".** The Amended Complaint and it's evidence (Dkt #114-1, Ex's 4,5,7) clearly show instant messages between the Defendant and Plaintiff where they asked about those Contracts, they were listed, and based contingent on them – Defendant offered *"the largest discount ever".*

## [IMPROPER #4] AI-GENERATED CASELAW

10. Throughout these proceedings, and as detailed in the sanctions motion (Dkt #117), Defendant continues to rely on AI-halloucinated caselaw. Defendants Motion to Dismiss (Dkt #127) is no exception. Defendant states: *["A general firmware update does not show Rokoko's intent to interfere with or disrupt Plaintiff's contractual relationships. Go Daddy Operating Co., LLC v. Ghaznavi, 2018 WL 1091257, at \*9 (N.D. Cal. Feb. 28, 2018)."].* However, that case has nothing to do with firmware, or software updates of any kind. **First,** Godaddy's products are web-based digital products and do not utilize firmware in any way. Firmware is the operating software that custom, small form-factor hardware runs

on. GoDaddy is a website domain reseller. They don't make hardware or devices, therefore – no firmware either. **Second,** that case is a solely trademark infringement case in which Ghaznavi had cybersquatted on Domains and then used Godaddy's logo and name to make the the public believe those domains were under the responsibility, care and trusted name of Godaddy.

## CONVERSION TO A RULE 56 MOTION

## DEFENDANTS MOTION IS NOT A PROPER 12(b)(6), IT IS A RULE 56

11. Under Rule 12(d), [*"[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."*] Fed. R. Civ. P. 12(d). Reiterated further in *(Geinosky v. City of Chicago, 675 F.3d 743, 745 n.1 (7th Cir. 2012))* the Seventh Circuit noted that a Rule 12(b)(6) <u>motion can be based only on the complaint itself</u>, including documents attached to, or referred to in, the complaint, and information that is properly

subject to judicial notice. Id. If the defendant relies on **any other** materials in support of her motion, and they are not excluded by the court, then the motion must be treated as one for summary judgment under Rule 56. *See id.; Fed. R. Civ. P. 12(d).*

12. That is exactly what Defendants have done here. Defendants rely on extrinsic materials submitted at Dkt. #127-1 -- including billing system screenshots, third-party website content, and disputed versions of purported Terms & Conditions -- to support factual assertions outside the four corners of the Complaint. Those materials are not proper subjects of judicial notice, have been in dispute since the Complaint was filed and beyond and form the factual backbone of the Motion itself. Because Defendants chose to rely on those materials, the Motion cannot be treated as a Rule 12(b)(6) motion and must be analyzed, if at all, under Rule 56.

## DEFENDANTS MOTION FAILS DUE TO EQUITABLE ESTOPPEL AND PRECLUSION OF EVIDENCE

13. **DEFENDANTS DEFEATED THEIR OWN MOTION -** As the Court must now treat the motion as a Rule 56, it fails wholly under the following factual and evidentiary standards. The Defendant only now provides a contradictory position which was made in discovery.

PAGE 14

Defendant's cannot have it both ways: irrelevant to any claim, waiver of defense in discovery then later dispositive in a Rule 56 or Rule 12(b)(6).

14. An accounting of Defendants assertions which are estopped are collapsed in the declaration *("Walsh Decl. Equitable Estoppel and Preclusion")*

15. **DEFENDANTS ARE ESTOPPED**

16. Plaintiff, appearing pro se, reasonably relied on Defendants representations concerning relevance in discovery and structured his litigation conduct accordingly. This includes making strategic and procedural choices he otherwise would not have made or been forced to make, resulting in multiple instances of detriment including expending enormous time and he finite resources.

17. Defendants, who were represented by counsel, are therefore equitably estopped from reversing those positions. *["California law particularly disfavors estoppels where the party attempting to raise the estoppel is represented by an attorney at law…. One who acts with full knowledge of plain provisions of law and their probable effect on facts within his or her knowledge, especially where represented by counsel, may claim neither ignorance of the true facts nor detrimental reliance on the conduct of the person to be estopped, two of the essential elements of equitable estoppel."] (Rustico v. Intuitive Surgical, Inc., 424 F. Supp. 3d*

*720 (N.D. Cal. 2019), aff'd, 993 F.3d 1085 (9th Cir. 2021)). ["Equitable estoppel is "not a punitive notion, but rather a remedial judicial doctrine employed to insure fairness, prevent injustice, and do equity."] (Leasequip, Inc. v. Dapeer, 103 Cal. App. 4th 394, 403, 126 Cal.Rptr.2d 782 (2002))*

18. Every 'fact' and 'evidence' they assert in their motion they have prior stated: "*not relevant to a claim or <u>defense of any party</u>*" is a clear violation of Rule 37(a)(4) and expressly closed the door at the time of representation.  Defendant committed themselves to a refusal-based litigation position going forward, triggering estoppel. *["The affirmative acts that trigger equitable estoppel under California law "often take the form of a promise on the part of the defendant concerning future performance."*] (Hauser v. Josephtal & Co., Inc., No. B189843, 2007 WL 662469, at *2 (Cal. App. Mar. 6, 2007)). Defendants' expressly disclaimed defense in only those select instances and therefore have waived defenses against estoppel. (Ashou v. Liberty Mutual Fire Ins. Co., 138 Cal. App. 4th 748, 41 Cal.Rptr.3d 819 (2006))

19. Defendants had a Rule 26 duty to disclose, and their waiver and silence equitably estop them from later relying on inaction where prior conduct

created a duty to speak. *Prudential Home Mortgage Co. v. Superior Court*, 66 Cal.App.4th 1236, 1252, 78 Cal.Rptr.2d 566 (1998).

20. The Defendants' wholly declared bankruptcy on 'relevance' and 'any parties defense' -- and then later try to cash 'relevance' as a check to pay for their defense. Both cannot exist.

21. Therefore based on (a) Defendant's own express statements including (a) the nullification of 'defenses of any party' and; (b) Defendant's declaration that they are unrelated to any claims. **Defendant's motion is wholly estopped, has no argument remaining and fails substantively.**

## DEFENDANTS OWN CONTRACT AND THE PLEADINGS DEFEATS ALL DISPOSITIVE ARGUMENTS AND CLAIMS

22. "Defendant's Motion to Dismiss rises or falls on the assumption that its License Agreement authorized the challenged conduct. Plaintiff has plausibly alleged -- using Defendant's own 2020 Agreement -- that it not only had zero authorization, but expressly forbade any access by Defendants' *(see "Walsh Decl. Original 2020 Contract Terms")*. That alone precludes dispositive relief for all claims under Rule 12(b)(6).

PAGE 17

23. **<u>Each one of Defendant's dispositive arguments fail</u>**. Plaintiff has rebutted each of their contentions, there is no theory left that can be resolved without 'choosing facts', an improper move at 12(b) as the Court must accept Plaintiffs' as operative and factual.

24. *"No valid economic relationships"*

    a. (Am. Compl. Ex. 1-3, 6, 23), along with Nintendo and Sony SKU's (Am. Compl. p.7, ¶ 1), and a near-identical Nintendo contract to the one Plaintiff is barred from sharing (RJN Dkt #139) prove otherwise.

25. *"Whether platform access constitutes an economic relationship is fact-intensive", "Nintendo/Sony portals are free signups"*

    a. Plaintiff points to the Defendants' mischaracterization of Nintendo's website and further provides a near-identical contract Nintendo issued for it's predecessor to the Switch. Plaintiff signed a similar agreement. (see Dkt #139, Ex. 2)

26. **"Rokoko had no knowledge of relationships"**

    **a.** (Am. Compl. p.8, ¶ 4), (Am. Compl. Ex. 7) shows literal text messages from the Defendant in which they asked about the contracts, then issued "the largest discount ever" based on it. The

equipment was mailed to Plaintiff not by a nameless customer service agent, but from the COO himself Mikkel Lucas Overby (Orig. Compl. 90-93)

27. *"No intent to harm—just a firmware update"*

    a. Contract (**§ 1.8**) declares all services and updates are "elective", yet the firmware was forced. Additionally Defendant's own developer notes declare their knowledge that it breaks "older" glove and hub compatibility was written *prior to the release of the firmware* and then knowingly released, destroying Plaintiff's older equipment. (Am. Compl. p.5 ¶ 6 & p.8 ¶ 4, 5), (Am. Compl. Ex. 14)

28. *"No independently wrongful act"*

    a. Requires a legal conclusion. However, the contract (**§ 2.1.1**) specifically disclaims and prohibits unauthorized access, harvesting, cloud use and states it is specifically a contractual breach. Illegality alleged is sufficient at the pleading stage.

29. *"Damages are speculative"*

    a. Requires a legal conclusion. Contract (**§3.1.2**) recognizes commercial value of outputs. Plausibility and damages don't require proof at 12(b)(6).

30. ***"Animations aren't trade secrets", "Trade secrets not pled with specificity"***

    a. Defendant's Contract **(§3)** disagrees wholly in opposition and defines it themselves:

        i. It specifically defines Plaintiff as Licensee;

        ii. It defines Plaintiff's animations as 'Supplemental Materials': [*"Supplemental Materials include, without limitation, (a) content, such as … settings and* **<u>animations</u>**"]

        iii. It then states: [*"The [structure and organization of Software] included in the ROKOKO Materials, any source code* **<u>or [similar materials relating to</u>** *such Software***] are valuable trade secrets**… *may be used only internally and only in conjunction with and for Licensee's own authorized internal use"*]

31. ***"Public disclosure destroyed secrecy"***

    a. (Am. Compl. P. 10, ¶ 10) specifically states that the animation data has *never been disclosed*. The Court must accept it as true at 12(b). Disclosure scope is factual and requires a legal conclusion.

32. ***"Uploading to platform waived secrecy", "Plaintiff voluntarily uploaded", "No improper means"***

a. (Am. Compl. p.9, ¶ 8) specifically details with evidence that no such voluntary events took place. The Court must accept it as true at 12(b). Contract bars defendant from any collection **(§2.1.1)** and supersedes all future agreements wholly forever **(§8.1, 8.3, 9.13).**

b. Plaintiff plead from the beginning: the intellectual property was covertly stolen from him. A Defendant cannot steal trade secrets, then say *"Because I stole them, they aren't a secret anymore"* as a legal defense. That is wholly unconscionable.

33. ***"License authorizes all use", "License is an affirmative defense"***

a. No terms have ever existed from 2020 through all of 2024… From when Plaintiff became a customer, to after he stopped entirely… Which granted *any license or use of any intellectual property* to the Defendants. Further, the 2020 Contract disclaims all use and access for Defendant **(§2.1.1, 2.1.4)**, bars Defendant from distributing or disclosing to third parties **(§3)** – and establishes those claims survive <u>forever</u> **(§8.3, 9.13).**

34. ***"No copyright registration at filing"***

**a.** Copyright attaches at time of creation 17 U.S.C. Section 102

*b.* 17 U.S. Code § 412 states legal remedy is unaffected and Plaintiff is not time-barred if the "first publication" (sale to a consumer) has

never occurred, which it has not. Further, § 412 provides an exception *"or 1 month after the copyright owner has learned of the infringement"*. Plaintiff learned of the infringement on or about April 17, he filed on or about May 7. Lastly, Plaintiff has plead through image and video evidence that infringement is new and ongoing, post-registration date; entitling him to awards of statutory damages for all new infringements. (Am. Compl. p.13, ¶ 18) (Am. Compl. Ex. 32-34, 47-52, 50, 55, 56). Regardless, this simply limits remedies, it does not qualify dismissal.

35. ***"No copying alleged"***

    a. Simply incorrect. There is an entire cause of action plead for misappropriation which in this case is the literal act of copying (Am. Compl. p.13, ¶ 18). Video evidence of the copying was presented (Am. Compl. Ex. 34)

36. ***"DMCA fails with copyright claim", "No intent under DMCA", "No Distribution"***

    a. A claim for Copyright Management Information (CMI) stripping under DMCA §1202(b) does not fail because the work is unregistered, it creates a separate, statutory right that exists independently of the underlying copyright

registration. Additionally, CMI stripping is still ongoing post-registration. (Am. Compl. p.6, ¶ 9), (Am. Compl. Ex 32, 34).

b. Scienter plausibly inferred, Defendant admitted to doing so (Compl. Ex. 44, 52)

c. DMCA §1202 covers removal + concealment, not just distribution

37. ***"RICO exceeds leave to amend"***

a. The Court placed no prohibitions on adding claims. Further, in the original Complaint, Plaintiff plead that he will amend as the facts become clearer (Orig. Compl. p.64, ¶ 96, ¶ 98): ["*Plaintiff reserves the right to assert a claim for civil RICO under 18 USC 1962 upon the discovery of additional evidence supporting such a claim of racketeering activity"]*. Defendant and the Court had sufficient notice.

38. ***"RICO not pled with particularity", "No enterprise"***

a. RICO is plead with the precise requirements compliant with Rule 9(b) and as found in other civil RICO cases: Two or more predicate acts grounded in contracts, updates, transmissions. Particularity disputes are factual, not dispositive.

b. Enterprise plausibly alleged through Defendant's own statements, third party sales (Ex. 48-52) and investor materials (Ex. 37) who

contractually engaged and purchased equity stake in exchange for the ability to also engage in misappropriation and infringement.

39. ***"Jury demand waived"***

    a. New factual allegations revive jury right. The Court already accepted the designation and updated ECF.

## **TERMINATING SANCTIONS WARRANTED**

## **FABRICATING EVIDENCE WARRANTS TERMINATION**

1. This is not the first, second or third time Defendant's have filed a Motion to Dismiss containing falsified evidence, it is the fourth. It can no longer be considered anything but bad faith. *["Dismissal is also appropriate when the sanctionable conduct is willful or done in bad faith. Id. "Dismissal is particularly warranted where one party submits falsified evidence" because the "submission of falsified evidence substantially prejudices an opposing party by casting doubt on the veracity of all the culpable party's submissions throughout [the] litigation." Pope v. Fed. Express Corp., 138 F.R.D. 675, 683 (W.D. Mo. 1990) (aff'd in part, vacated on other grounds, 974 F.2d 982 (8th Cir. 1992))."]*

2.  Defendants were always aware that the evidence in question was fabricated as it was mentioned in multiple 7-3's and in multiple filings upon the record (Dkt's # 57, 80, 82, 85, 89, 93, 117, 117-5) and further that they are facing a sanctions motion over this very evidence, and this very type of motion (Dkt's #117, 117-5) *["To establish a fabrication of evidence claim, a party must allege that the defendants **knew** the evidence was fabricated, as well as "that the fabricated evidence was so significant that it could have affected the outcome of the … case."] Ricci, 2023 WL 4686025, at \*9* (quoting Black v. Montgomery Cnty., 835 F.3d 358, 369 (3d Cir. 2016)) (citations omitted)). And here, the Defendants' rely on those false statements and false evidence to do just that – dismiss Plaintiff's intellectual property claim: *["Rokoko's License Agreement, which Plaintiff relies upon at length in his Amended Complaint, expressly authorizes Rokoko to use and collect any User Content, which Rokoko confirms will never be distributed in its original form. The existence of a license is an affirmative defense to a copyright infringement claim"].* This simply just isn't true and Defendant knows it isn't. As demonstrated in the 2020 terms (see RJN Dkt #139) and even the 2022-2025 terms they themselves submitted (Dkt #1-3, p. 372-383). Neither agreement contain any such license; and in fact, the 2020 version disclaims it wholly.

Defendant's refuse to admit or deny anything regarding the terms & conditions due to this adverse knowledge. *(see "Walsh Decl. re: Terms and Conditions RFA").*

3. Defendant's fabricated evidence because they knew the 2022-March 29, 2025 version undercuts their position wholly. By manipulating the date on the March 30 retroactive terms, it appears as that version was active during Plaintiff's usage. *["Additionally, when a party submits falsified evidence, the "prejudiced party is forced either to attempt independent corroboration of each submission, at considerable expense of time and money, or to accept the real possibility that those discovery documents submitted by the opposing party are inaccurate." Id. Moreover, excluding the fabricated evidence is not always enough to deter discovery misconduct because "**[l]itigants would infer that they have everything to gain, and nothing to lose, if manufactured evidence merely is excluded while their lawsuit continues**." Id."] quoting Martin v. Domino's <u>Pizza.</u>, No. 222CV00784GMNDJA, 2023 WL 7461882, at \*3 (D. Nev. Nov. 9, 2023)*

## **<u>FABRICTAED CASELAW WARRANTS TERMINATION</u>**

4. Defendants have used AI-hallucinated caselaw about 38 times that Plaintiff has discovered (Dkt 's # 23-1, 43, 47, 75 ,76, 77, 78, 80-4, 99, 117- 5). Despite repeatedly requesting that Plaintiff withdraw the filings and threatening to oppose and file for Rule 11 sanctions (Dkt #73, 86, 117. Defendant never once opposed, nor filed for sanctions. They acquiesced because it's true:

5. In just a single instance, a Rule 11 threat letter was sent stating: *["Even a cursory review of the authorities cited by Rokoko, which are enclosed herewith, demonstrate that your Request for Judicial Notice, which you signed under penalty of perjury, is meritless. We therefore demand that you withdraw your Request for Judicial Notice"].* It was never opposed. Those LEXIS files were then taken and read and analyzed forensically.

6. Afterwards, Plaintiff brought a motion for sanctions which used their own LEXIS pdf documents and the forensic analyzations of the same (Dkt #84-4) as evidence against them.

7. Defendant still continues today submitting false authorities. *["See Wadsworth v. Walmart Inc., 348 F.R.D. 489, 497 (D. Wyo. 2025) ("It is ... well-known in the legal community that AI resources generate fake cases."). We also suspected that the two misattributions were also produced by the use of a GenAI tool. Such fabricated cases and*

*misattributions are often referred to as "AI hallucinations." See id. at 493 ("A hallucination occurs when an AI database generates fake sources of information." (citing What are AI Hallucinations?, Google Cloud, https://cloud.google.com/discover/what-are-ai-hallucinations [https://perma.cc/EJS8-CFMX]))" and further "Moore's citation of nonexistent cases and her misrepresentation of at least one other case has impaired judicial efficiency and amounts to a failure to comply with … requirement[s] that a…brief cite[s] supporting authority. See Grant v. City of Long Beach, 96 F.4th 1255, 1257 (9th Cir. 2024) (striking brief and dismissing appeal because of similar failures to comply with Rule 28(a)(8)(A)). Fabricating case citations and clearly misrepresenting what a case stands for are the antithesis of citing to supporting authority."] quoting Moore v. City of Del City, No. 25-6002, 2025 WL 3471341, at \*2 (10th Cir. Dec. 3, 2025)*

8. *["**His citations to non-existent cases and violations of various rules and orders do in fact prejudice [Plaintiff].** [Defendants] noncompliance has stalled proceedings, wasted the Court's time, cost [Plaintiff] money, and impeded the parties from having their motions adjudicated on the merits. See Ho v. Warren, No. 8:21-cv-2621, 2021 WL 5494374, at \*3 (M.D. Fla. Nov. 23, 2021)"] quoting (Williamson v. Transunion LLC, No. 3:24-*

*CV-43-WWB-PDB, 2025 WL 2443063, at \*6 (M.D. Fla. Aug. 5, 2025))* Courts routinely terminate the offending party and refer Counsel to the bar where knowledge or intent are present.

## DEFENDANTS REQUEST TO DISMISS WITH PREJUDICE AFTER ONE AMENDMENT IS MOOT

9. A defendant asking for dismissal with prejudice while simultaneously poisoning the evidentiary well is contrary to every law and principle. *["a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable"… "The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the "plain statement" possess enough heft to "sho[w] that the pleader is entitled to relief."]* (Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557, 127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007). [*"the accepted rule that a complaint should not be dismissed for failure to state a claim **unless** it appears **beyond doubt** that the plaintiff can prove **no set of facts in support of his claim** which would entitle him to relief."*] 355 U.S., at 45–46, 78 S.Ct. 99. To truly satisfy beyond doubt is a high bar. [***The determination of whether a complaint satisfies the plausibility standard***

*is a "context-specific task that requires the reviewing court to draw on its judicial experience and* <u>*common sense*</u>*."]* Id. at 679. [*"A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable"]* to the plaintiff. Lee v. City of Los Angeles, 250 F.3d 668, 679 (9th Cir. 2001). Further, FRCP 15(a) requires Courts to "freely give leave" to amend pleadings "when justice so requires". Cases in this district have entertained beyond even the seventh amended Complaint in no less than 25 matters *(see Sols. for Utilities, Inc. v. California Pub. Utilities Comm'n, No. 2:11-CV-04975-JWH-JCG, 2023 WL 2504752 (C.D. Cal. Mar. 13, 2023), Jonathan King Speaks v. Det. K. Bertsch, et al. Jonathan King Speaks, No. 2:24-CV-08160-VBF (DTB), 2025 WL 3691944, at *1 (C.D. Cal. Nov. 12, 2025))*

## **<u>CONCLUSION</u>**

Plaintiff cannot meaningfully litigate merits when the foundation itself is fictional. There is nothing within the Defendants' motion to substantially oppose except the sheer existence of the document itself.

**PRAYER FOR RELIEF**

- ORDER Defendant's Rule 12(b)(6) motion to be converted as a Rule 56 pursuant to Rule 12(d).

  - In the event the Court applies Rule 56, Plaintiff requests that both parties be ordered to submit any supporting evidence and statements within ten (10) days.

- ORDER Defendants to show cause why terminating sanctions should not issue for manipulating and submitting inauthentic evidence, repeatedly relying on AI-fabricated caselaw, and failing to comply with the Local Rules.

**In the alternative, Plaintiff requests that the Court:**

- DENY Defendant's fourth Motion to Dismiss **<u>with prejudice.</u>**

- ORDER Defendants' to answer the Complaint within 30 days.

  ORDER Defendants to show cause why terminating sanctions should not issue for manipulating and submitting inauthentic evidence, repeatedly relying on AI-fabricated caselaw, and failing to comply with the Local Rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated this January 27, 2026, in Santa Clarita, California.

Matthew R. Walsh
Plaintiff In Pro Per

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff appearing in pro per, certifies that this brief contains 5,670 words, which complies with the word limit of L.R. 11-6.2.