**O**

# United States District Court
# Central District of California

MATTHEW R. WALSH,

              Plaintiff,

    v.

ROKOKO ELECTRONICS et al.,

              Defendants.

Case № 2:25-cv-05340-ODW (RAOx)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS [136]**

## I.    INTRODUCTION

Plaintiff Matthew R. Walsh brings this action against Defendant Rokoko Electronics, asserting various claims arising from Walsh's purchase of several Rokoko motion capture products.  (First Am. Compl. ("FAC"), Dkt. No. 114.)  Rokoko now moves to dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  (Mot. Dismiss ("Motion" or "Mot."), Dkt. No. 136.)  For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.[1][2]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

[2] In light of this disposition, Walsh may consider withdrawing, without prejudice, his April 8, 2026 Motion for Summary Judgment.  (Mot. Summ. J., Dkt. No. 163.)

## II.    BACKGROUND[3]

Walsh is a video game developer.  (FAC 1.)[4]  In 2019, Walsh was actively developing a new video game and entered into licensing and distribution agreements with various video game companies.  (*Id.* at 7.)  In 2020, Walsh purchased motion capture suits from Rokoko to use for production of his video game.  (*See id.* at 5, 8.)

Walsh alleges that, while he was using Rokoko's suits, Rokoko employed underhanded methods to steal the animations Walsh captured using Rokoko's suits and elements of his video game.  (*Id.* at 9–16.)  Rokoko then anonymized the data it collected from Walsh, stripping any information that could identify the data, before exploiting the data without Walsh's authorization.  (*See id.*)

In 2024, Rokoko deployed a firmware update that rendered Walsh's motion capture suits inoperable.  (*Id.* at 8.)  This setback halted Walsh's video game production, forcing him to lay off cast and crew and disrupting his licensing and distribution agreements.  (*Id.* at 8–9.)

On May 12, 2025, Walsh brought this action against Rokoko in state court.  (NOR 1, Dkt. No. 1.)  Rokoko removed the action to this Court.  (*Id.*)  On December 22, 2025, the Court granted Rokoko's motion to dismiss Walsh's Complaint with leave to amend.  (Order Grant Mot. Dismiss ("MTD Order"), Dkt. No. 113.)  Upon amendment, Walsh now brings five causes of action against Rokoko: (1) tortious interference with prospective economic advantage; (2) misappropriation of intellectual property under California's Uniform Trade Secret Act ("CUTSA"); (3) intellectual property infringement under federal copyright law; (4) violation of § 1202 of the Digital Millenium Copyright Act ("DMCA"); and (5) civil violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO").  (FAC 6–21.)

---

[3] All factual references derive from Walsh's First Amended Complaint or attached exhibits, and well-pleaded factual allegations are accepted as true for purposes of Rokoko's Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] Walsh does not sequentially number the paragraphs in his First Amended Complaint.  As such, the Court cites to the First Amended Complaint by page number.

Also on amendment, and for the first time in this action, Walsh demands a jury trial. (*Id.* at 2.)

Rokoko now moves to dismiss Walsh's First Amended Complaint for failure to state a claim under Rule 12(b)(6).   (Mot. 1–2.)   Walsh opposes.   (Opp'n, Dkt. No. 140.)[5]

### III.    LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).   To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim.  *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003).   The factual "allegations must be enough to raise a right to relief above the speculative level."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678 (2009) (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."   *Id.* at 679.   A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as

---

[5] In his opposition brief, Walsh again accuses Rokoko's counsel of using Artificial Intelligence ("AI")-hallucinated case law. (*Id.* at 26–29.)  His allegations are unsubstantiated and without merit. The Court has found no instance where Rokoko's counsel cites to nonexistent case law.  While Walsh may disagree with Rokoko's counsel about what a case stands for or the weight it carries, these are not grounds for accusing opposing counsel of citing AI-hallucinated case law.  These allegations are especially concerning as the Court is aware of the damage that using, or simply being accused of using, AI-hallucinated case law can have on an attorney's career.  The Court warns Walsh that if he continues to make baseless allegations of this kind, the Court will exercise its inherent authority to impose sanctions for bad-faith conduct. *See Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001) (holding that courts have "the inherent authority to impose sanctions for bad faith, which includes a broad range of willful improper conduct"); *Warren v. Guelker*, 29 F.3d 1386, 1390 (9th Cir. 1994) (holding that courts may not decline to impose sanctions simply because a plaintiff is proceeding pro se).

true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Thus, leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

## IV.    DISCUSSION

Rokoko moves to dismiss Walsh's five causes of action under Rule 12(b)(6). (Mot. 1–2.) Rokoko also moves to strike Walsh's jury trial demand. (*Id.* at 17–18.)

### A.    Tortious Interference with Prospective Economic Advantage (Count 1)

Walsh's first cause of action is tortious interference with prospective economic advantage. (FAC 6–9.) Walsh's theory is that Rokoko intentionally released faulty firmware that knee-capped his video games to the detriment of his relationships with several video game companies. (*See id.*)

Under California law, to assert a claim for intentional interference with prospective economic advantage, a plaintiff must allege: (1) "an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff"; (2) "the defendant's knowledge of the relationship"; (3) the defendant's intentional acts "designed to disrupt the relationship"; (4) "actual disruption of the relationship"; and (5) "economic harm to the plaintiff proximately caused" by the defendant's acts. *CRST Van Expedited, Inc. v. Werner Enters., Inc.*,

479 F.3d 1099, 1108 (9th Cir. 2007) (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003)).  While similar to the tort of intentional interference with contractual relations, the tort of "interference with prospective economic advantage [also] requires a plaintiff to allege an act that is wrongful independent of the interference itself." *Id.* (citing *Della Panna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 392–93 (1995)).

Walsh's tortious interference claim fails at the third element.  "California requires either specific intent or 'knowledge that [defendant's] actions were certain or substantially certain to interfere with plaintiff's business expectancy.'"  *Go Daddy Operating Co. v. Ghaznavi*, No. 17-cv-06545-PJH, 2018 WL 1091257, at *10 (N.D. Cal. Feb. 28, 2018).  "Only when the actor's conduct is intended to affect a specific person is the actor subject to liability under this rule." *Id.* (quoting *Ramona Manor Convalescent Hosp. v. Care Enters.*, 177 Cal. App. 3d 1120, 1133 (1986)).

Walsh fails to demonstrate the requisite intent in the First Amended Complaint. He plausibly alleges that Rokoko knew of Walsh's relationships with various video game companies, attaching evidence showing that Walsh told Rokoko of his potential business opportunities with companies like Nintendo.  (FAC 7–8, Ex. 5 ("Chat Log"), Dkt. No. 114-1.)  He also plausibly alleges that Rokoko released a firmware update that severely hindered Walsh's video game development.  (FAC 8.)  However, he does not plausibly allege that Rokoko acted with the intent or knowledge that its firmware update would affect Walsh's potential relationships with Nintendo and others.  His allegations do not even plausibly support the inference that, as Walsh states, Rokoko acted "as a form of planned obsolescence," (*id.*), a conclusory allegation that finds no support in the exhibits Walsh attaches.  At best for Walsh, the factual allegations lead to the inference that Rokoko carelessly released a firmware update without an adequate plan in place to fix its consequences.  However, they do not lead to the inference that Rokoko released the firmware update with the intent to, or knowledge that it would, damage Walsh's business relationships.

5

Walsh's tortious interference claim also fails because he does not allege an independently wrongful act. "[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply*, 29 Cal. 4th at 1159. Here, however, Walsh fails to identify under what legal standard the Court should use to assess whether Rokoko's release of a malicious firmware update rises to the level of an "independently wrongful act." (*See generally* FAC; Opp'n.)

For these reasons, the Court **GRANTS** the Motion and **DISMISSES** Walsh's first cause of action **WITH LEAVE TO AMEND**, providing Walsh with a final opportunity to cure the deficiencies the Court identifies above.

**B.     Misappropriation of Intellectual Property (Count 2)**

Walsh's second cause of action is misappropriation of intellectual property. (FAC 8–12.) Although Walsh discusses both his alleged trade secrets and copyrights within the context of this cause of action, he brings the second cause of action under California Civil Code section 3246, otherwise known as CUTSA. (FAC 9–12.) Thus, the Court construes this cause of action as trade secret misappropriation.

To assert trade secret misappropriation, a plaintiff must allege that: (1) the plaintiff owned a trade secret, (2) the defendant misappropriated the trade secret, and (3) the defendant's actions damaged the plaintiff. *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018). California law defines trade secrets as "information, including a formula, pattern, compilation, program, device, method, technique, or process, that . . . derives independent economic value . . . from not being generally known to the public." Cal. Civ. Code § 3426.1(d). Thus, "a trade secret is protectible only so long as it is kept secret by the party creating it." *Vacco Indus., Inc. v. Van Den Berg*, 5 Cal. App. 4th 34, 50 (1992).

Walsh alleges that he owns "proprietary designed, directed, and recorded motion-capture data . . ., consisting of over 850 individually recorded action and cinematic movement sequences." (FAC 9.) He further alleges that he planned to use

these animations "in his video game production."  (*Id.* at 9–10.)  Even if these animations may have once constituted trade secrets, Walsh repeatedly disclosed these animations, destroying their secrecy, and thus their protectability.  For example, in August 2025, Walsh hosted an event where he revealed the games, and the underlying animations in the game, to the public.  (FAC Ex. 15 ("August 2025 Event Pictures"), Dkt. No. 114-1.)  Walsh also released a trailer for his video game on YouTube, further destroying the secrecy of the underlying animations.  (FAC Ex. 17 ("IGN Screenshot"), Dkt. No. 114-1.)

Walsh argues only that the Court must accept as true his allegation that the "animation data has never been disclosed."  (Opp'n 20 (citing FAC 10).)  However, the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."  *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998).  Here, Walsh's own allegations and exhibits demonstrate that his animations have been publicly disclosed and are imbued with no further protectability.

For these reasons, the Court **GRANTS** Defendants' Motion and **DISMISSES** Walsh's second cause of action.  As Walsh's alleged trade secrets are publicly disclosed and because he cannot put the genie back in the proverbial bottle, the Court dismisses this cause of action **WITHOUT LEAVE TO AMEND**.

### C.    Intellectual Property Infringement (Count 3)

Walsh's third cause of action is for "intellectual property infringement."  (FAC 13–15.)  As Walsh cites to 17 U.S.C. § 501, which is the federal copyright infringement statute, the Court construes this claim as a copyright infringement claim.

"To establish a prima facie case of copyright infringement, a plaintiff must show (1) ownership of a valid copyright and (2) violation by the alleged infringer of at least one of the exclusive rights granted to copyright owners by the Copyright Act."  *UMG Recordings, Inc. v. Augusto*, 628 F. 3d 1175, 1178 (9th Cir. 2011).  Rokoko argues that Walsh fails to satisfy both elements.  (Mot. 10–12.)

*1.    Copyright Ownership*

Under 17 U.S.C. § 411(a), "no civil action for infringement of the copyright in any United States work shall be instituted until . . . registration of the copyright claim has been made in accordance with this title." *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 299 (2019) (holding that registration occurs under 17 U.S.C. § 411(a) when the Copyright Office finishes review and registration of a copyright).

As an initial matter, Walsh claims ownership of two copyrights: (1) PAu 4-279-489 and (2) #14,954,598,732.  (FAC 2–3.)  However, neither Rokoko nor the Court can identify the latter copyright registration (#14,954,598,732) in public records.  (*See* Mot. 10–11.)  As Walsh fails to prove otherwise, (*see generally* Opp'n), his copyright infringement claim proceeds only on the former copyright registration (PAu 4-279-489), *see JAT Wheels, Inc. v. DB Motoring Grp.*, No. 2:14-cv-05097-GW (AGRx), 2016 WL 9453798, at *3 (C.D. Cal. Feb. 11, 2016) (dismissing copyright infringement claim because the plaintiff failed to demonstrate it owns a valid copyright registration).

Rokoko asks the Court to dismiss Walsh's copyright infringement claim because he did not register his copyright before initiating this action.  (Mot. 10–11.)

Rokoko's argument raises an issue that neither the Supreme Court nor the Ninth Circuit has squarely addressed: "whether a plaintiff who files suit before registration of a copyright can cure that defect by amending the complaint after registration is complete." *Dolby Lab'ys Licensing Corp. v. Roku, Inc.*, No. 24-cv-04660-EJD, 2025 WL 2021803, at *8 (N.D. Cal. July 18, 2025).  District courts are split over this issue.  Some courts have found that the Copyright Act and the Supreme Court's *Fourth Estate* holdings strictly require dismissal where a plaintiff failed to register a copyright prior to filing an action.  *See, e.g.*, *Washoutpan.com, LLC v. HD Supply Constr. Supply Ltd.*, No. 2:19-cv-00494-AB (JEMx), 2019 WL 9050859, at *2–3 (C.D. Cal. Aug. 5, 2019) (collecting cases).  Other courts interpret the Copyright Act

8

and *Fourth Estate* differently, finding that neither precludes a plaintiff from amending a complaint to claim infringement of a newly registered copyright. *See, e.g.*, *Dolby*, 2025 WL 2021803, at *8–9 (collecting cases).

The Court is persuaded that the latter approach is the better one here and is harmonious with the law, while the former approach "favor[s] form over function." *Id.* First, for the purposes of 17 U.S.C. § 411, Walsh alleges a copyright infringement claim for the first time in his First Amended Complaint. In his original Complaint, Walsh did not specify that he was instituting a copyright claim, nor did he specifically identify what copyrights he held. (*See generally* Compl.; MTD Order 10–11.) Walsh cured these deficiencies in his First Amended Complaint, now identifying the specific copyright Rokoko allegedly infringed and that Walsh is bringing a copyright claim. Thus, Walsh can now be said to have "instituted" a copyright claim. *See Phillips N. Am. LLC v. KPI Healthcare, Inc.*, No. 8:19-cv-01765-JVS (JDEx), 2020 WL 3032765, at* 3 (C.D. Cal. Jan. 24, 2020) (permitting amendment to assert infringement of a newly registered copyright as plaintiff was not "curing a defective, *existing* claim for copyright infringement" (emphasis added)).

Second, dismissing Walsh's copyright claim would not serve judicial efficiency and would only force Walsh to pay "a second filing fee to commence the separate action." *Dolby*, 2025 WL 2021803, at *9. In all likelihood, Walsh's second action—raising only a copyright claim but based on similar factual issues—would be consolidated into this one. *See* C.D. Cal. Gen. Order No. 07-02 ¶ 5 (providing for discretionary transfer of cases that "arise from the same or a closely related transaction, happening, or event"). The Court agrees with those courts that have found "requiring [a plaintiff] to file a separate action that will end up back in the original action is [not] what the Supreme Court intended in *Fourth Estate*, nor what Congress intended in the Copyright Act." *Dolby*, 2025 WL 2021803, at *9.

For these reasons, the Court declines to dismiss Walsh's copyright claim on this ground.

## 2.       *Violation of an Exclusive Right*

Section 106 of the Copyright Act grants copyright owners certain exclusive rights in their copyrights.  These exclusive rights include reproducing the copyrighted work, preparing derivative works, or distributing copies of the copyrighted work.  17 U.S.C. § 106(1)–(3).  Infringing on any of these rights exposes one to liability under the Copyright Act.   17 U.S.C. § 501(a) ("Anyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright . . . .").

Rokoko argues that Walsh failed to allege what purportedly derivative work "[is] 'substantially similar' to what he contends is entitled to copyright protection." (Mot. 11 (citing *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002)).) However, creating a derivative work is only one of several ways that a defendant can commit copyright infringement.  *See Cavalier*, 297 F.3d at 822 ("Copying *may* be established by showing that the . . . works at issue are substantially similar in their protected elements." (emphasis added)).  Indeed, Walsh's theory is not that Rokoko created a derivative work based on Walsh's video game, but that Rokoko "sub-license[d] [Walsh's] intellectual property to third-parties."  (FAC 14.)   Thus, Rokoko's argument fails as it misapprehends Walsh's theory of liability.

Rokoko also argues that its licensing agreement expressly authorizes Rokoko to use Walsh's content.  (Mot. 11.)  "The existence of a license creates an affirmative defense to a claim of copyright infringement."  (*Id.* (citing *Worldwide Church of God v. Phila. Church of God, Inc.*, 227 F.3d 1110, 1114 (9th Cir. 2000)).)  However, Walsh alleges that he could not have agreed to Rokoko's licensing agreement because it was imposed "after [he] was no longer a user."  (FAC 5 (emphasis omitted).)  If true, this would mean that there was no licensing agreement in place at the time of the alleged infringement, defeating Rokoko's potential affirmative defense.  As the Court must take Walsh's well-pleaded allegations as true for the purposes of this Motion, the Court declines to dismiss on this ground.

For these reasons, the Court **DENIES** the Motion to Dismiss Walsh's third cause of action for copyright infringement of PAu 4-279-489.

**D.    DMCA Violation (Count 4)**

Walsh's fourth cause of action is for violation of § 1201 of the DMCA. (FAC 16–18.)  Section 1201 of the DMCA prohibits circumvention of "technological measure[s] that effectively control[] access to" works protected by the DMCA. 17 U.S.C § 1201.  Section 1202 prohibits, among other things, falsifying, altering, or removing copyright management information ("CMI").  *Id.* § 1202(a)–(b).  CMI is information that could tend to identify the true title or author of a copyrighted work. *See id.* § 1202(c).    Only people "injured by a violation of section 1201 or [section] 1202 may bring a civil action" for such violation.  *Id.* § 1203.

In its prior dismissal order, the Court noted that Walsh failed to establish that "Rokoko modified any metadata that may have caused him injury," which is necessary to establish statutory standing.  (MTD Order 11.)  In an attempt to cure the previous deficiency, Walsh points to Rokoko's March 2025 Terms of Use update, which states that Rokoko may "sublicens[e] completely anonymized data to third parties."  (FAC Ex. 50 ("Terms of Use"), Dkt. No. 114-1.)  However, this language does not lead to the plausible inference that Rokoko stripped Walsh's CMI.  Read charitably in Walsh's favor, the language leads to only the plausible inference that, after March 2025, Rokoko could have begun stripping its users' CMI.  Moreover, Walsh readily admits in his First Amended Complaint that he stopped using Rokoko's products in September 2024, well before Rokoko updated its Terms of Use.  (FAC 5.)  As Walsh stopped using Rokoko's products before Rokoko announced that it may anonymize and sublicense its users data, his citation to the Terms of Use update does not cure his pleading deficiency.

As Walsh fails to establish injury under the DMCA, and therefore fails to establish standing, the Court **GRANTS** Rokoko's Motion and **DISMISSES** Walsh's fourth cause of action.  Additionally, the Court notes that Walsh fails to address

standing or any particularized injury in his opposition brief. (*See* Opp'n 22–23.) The Court construes this failure as waiver of the issue. *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[F]ailure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue."). Thus, the Court dismisses the fourth cause of action **WITHOUT LEAVE TO AMEND**. *See Lee v. Retail Store Emp. Bldg. Corp.*, No. 15-cv-04768-LHK, 2017 WL 346021, at *20 (N.D. Cal. Jan. 24, 2017) (denying leave to amend because the plaintiffs' "failure to even argue the issue in their opposition indicates a waiver of [their] claim").

**E.    RICO (Count 5)**

Walsh's fifth cause of action is for civil RICO fraud. (FAC 18–21.) "The elements of a civil RICO claim are as follows: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as predicate acts) (5) causing injury to plaintiff's business of property." *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (citation modified).

Rokoko argues that Walsh fails to satisfy the pleading standards under Rule 9(b).[6] (Mot. 16–17.) Rule 9(b) applies to civil RICO fraud claims and requires parties to "state with particularity the circumstances constituting fraud." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004). The Ninth Circuit has held that plaintiffs pleading civil RICO fraud claims must "state the time, place, and specific content of the false representations as well as the identifies of the parties to

---

[6] Rokoko also argues that Walsh exceeds the scope of the Court's prior leave to amend because Walsh's civil RICO claim is newly pleaded and was not raised in his original Complaint. (*See* Mot 15.) However, the Court did not limit Walsh to curing only existing causes of action. (*See* MTD Order 13–14); *see also Nacarino v. Chobani, LLC*, 668 F. Supp. 3d 881, 900–01 (N.D. Cal. 2022) ("District courts in this circuit generally allow plaintiffs to add new claims and/or parties to an amended complaint where a prior order of dismissal granted leave to amend without limitation." (citation modified)). Thus, the Court declines to dismiss on this ground.

the misrepresentation." *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392–93 (9th Cir. 1988).

Walsh alleges Rokoko committed wire fraud and computer fraud as predicate acts for RICO. (FAC 18–21.) For example, under wire fraud, Walsh alleges that Rokoko "transmitted false statements through interstate electronic communications via its website, terms and conditions, downloadable software, e-mails and related channels." (*Id.* at 19.) However, Walsh fails to plausibly and specifically detail each false statement, where it was made, and when it was made. *See Alan Neuman*, 862 F.2d at 1932–93. His allegations are far too sparse to satisfy Rule 9(b)'s stringent particularity requirement.

For these reasons, the Court **GRANTS** Rokoko's Motion and **DISMISSES** Walsh's fifth cause of action. The Court dismisses **WITH LEAVE TO AMEND**, providing Walsh with a final opportunity to plead Rokoko's alleged fraudulent acts with particularity.

**F.    Jury Demand**

For the first time in this action and only in his First Amended Complaint, Walsh demands a jury trial. Under Rule 38(d), a "party waives a jury trial unless its demand is properly served and filed." To timely demand a jury trial, a plaintiff must serve his or her demand "no later than 14 days after the last pleading directed to the issue is served." Fed. R. Civ. P. 38(b). Thus, when a plaintiff amends his or her pleadings, the plaintiff may only demand a jury trial if there are new issues of fact for a jury to decide. *Lutz v. Glendale Union High Sch.*, 403 F.3d 1061, 1066–67 (9th Cir. 2005).

Here, the Court can find no new issues of fact necessary for a jury to decide. Nor does Walsh attempt to make such a showing. (*See* Opp'n 24 (stating only that "[n]ew factual allegations revive [a] jury right" and failing to specify which factual allegations he contends are new).) As the "issues in the original complaint and the amended complaint turn on the same matrix of facts," *Lutz*, 403 F.3d at 1066–67, the Court **STRIKES** Walsh's jury demand.

13

## V.   CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** Rokoko's Motion to Dismiss.  (Dkt. No. 136.)  Specifically, the Court **DISMISSES** Walsh's first and fifth causes of action **WITH LEAVE TO AMEND**.  The Court **DISMISSES** Walsh's second and fourth causes of action **WITHOUT LEAVE TO AMEND**.  The Court **DENIES** Rokoko's Motion as to Walsh's third cause of action.

If Walsh chooses to file a Second Amended Complaint, he must do so no later than **twenty-one (21) days** from the date of this order, and Rokoko shall answer or otherwise respond no later than **fourteen (14) days** of the filing.  Amendment shall be strictly limited to curing the deficiencies identified above and Walsh may not add new claims or parties.

If Walsh does not timely amend, then the causes of action and claims the Court dismisses with leave to amend shall be deemed dismissed with prejudice as of the lapse of Plaintiffs' filing deadline.  In that event, Rokoko shall answer the surviving claim in the First Amended Complaint within **fourteen (14) days** of the lapse of Walsh's filing deadline.

**IT IS SO ORDERED.**

April 9, 2026

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**

14